UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CASEY T.,[1]

                         Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

DECISION AND ORDER

24-CV-6391-MAV

---

## INTRODUCTION

In June 2024, Casey T. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) and § 1383(c), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 8 (Plaintiff); ECF No. 14 (Commissioner). For the reasons set forth below, the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Plaintiff's motion [ECF No. 14] is denied.

## PROCEDURAL HISTORY

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

[2] The regulations governing the evaluation of a claimant's eligibility for DIB under Title II of the Social Security Act are found in Part 404 of Title 20 of the United States Code of Federal Regulations. The regulations governing the evaluation of a claimant's eligibility for SSI payments are found in Part 416. Because the relevant regulations in both Parts are practically identical, citations in this decision to regulations in Part 404 should be read to also reference the regulations applicable to SSI benefits in Part 416 unless otherwise indicated.

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

Plaintiff filed her application for DIB and SSI in December 2021, alleging a disability onset date of July 2019. Administrative Record ("AR"), 260–76,[3] ECF No. 5. She claimed her ability to work was limited by her post-traumatic stress disorder ("PTSD") and anxiety. AR at 301. In June 2022, the Commissioner found that Plaintiff was "not disabled," and her claims for DIB and SSI payments were denied. AR at 62–92. Plaintiff requested a reconsideration of the initial determination, and in November 2022 was again found "not disabled." AR at 93–129.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied her applications at the initial level and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR at 130. Plaintiff's request was granted, and she was scheduled to appear with her attorney for a hearing via telephone on July 12, 2023. AR at 37–61. Prior to the hearing, Plaintiff's attorney submitted a thorough pre-hearing brief to the ALJ, which summarized her position:

> [Plaintiff] is a 30-year old woman with severe mental health impairments, including Post-Traumatic Stress Disorder ["PTSD"], Depersonalization Disorder, and Depressive Disorder. [Plaintiff] has worked a variety of jobs in the past, but as a result of the severity of her mental health disorders, she is no longer able to maintain employment,

---

[3] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

and therefore made this application . . . . for Title II and Title XVI
benefits.

. . . .

As a result of her depersonalization disorder, [Plaintiff] suffers from
significant limitations, particularly when it comes to concentration,
persistence, and maintaining pace, interacting with others, and also
managing her own symptoms. [Plaintiff] has reported to her treatment
providers that she often needs reminders to eat from her roommate,
despite some recent improvement in her eating habits . . . .

[Plaintiff] has severe limitations when interacting with other people.
Her treating providers note extreme limitations in her ability to initiate
or sustain conversations as well as interacting with coworkers . . . .

[Plaintiff] struggles to maintain concentration or attention, particularly
as her symptoms "vary in duration" and therefore at times she is "unable
to stay on task or complete any tasks at all." . . . .

. . . .

[Plaintiff]'s symptoms satisfy the requirements outlined in listing 12.15,
Trauma- and stressor-related disorders. As noted above, [Plaintiff]'s
mental health symptoms began when she experienced the trauma of her
father's suicide in an adjacent room . . . . She experiences "typical PTSD
symptoms" as noted by her treatment providers . . . . Additionally, the
symptoms associated with her depersonalization disorder are
disturbances in mood and behavior, and [Plaintiff] also experiences
difficulty with sleeping and eating, thus dealing with increases in
arousal and reactivity.

Additionally, as noted by [Plaintiff]'s treating psychiatric providers, she
suffers from marked to extreme limitations in her ability to interact with
others as well as her ability to concentrate, persist or maintain pace . . . .

AR at 491–93 (internal citations to the AR omitted).

At the hearing, Plaintiff's attorney asked her what kind of symptoms she

experiences as a result of her diagnoses of depression, dissociative disorder, PTSD,

3

and anxiety. AR at 45. Plaintiff responded that she dissociated[4] a lot; had a lot of anxiety, including panic and anxiety attacks; and experienced memory loss. *Id.* She also testified that she had insomnia, often forgot to eat, and couldn't concentrate on anything. AR at 49–51. Plaintiff said she basically sat on the couch all day until her roommate returned from work at 3 P.M., and on a good day might try to crochet a little. AR at 52. She didn't drive and couldn't go to Walmart by herself, but stated that she could handle one-on-one situations for an hour or two. AR at 53.

The ALJ also heard testimony from Vocational Expert Robert Baker (the "VE"), who testified that a hypothetical claimant with a residual functional capacity[5] ("RFC") identical to that which the ALJ ultimately found Plaintiff to have would be capable of work as a router, a kitchen helper, and a marker. AR at 55–60.

### III. The ALJ's Decision

On July 28, 2023, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB or SSI. AR at 31. At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[6] through June 30, 2020, and had not engaged in substantial gainful activity since her alleged onset date of July 1, 2019. AR at 20. Then, at step two of the Commissioner's "five-step,

---

[4] When asked to describe her dissociation, she explained that "[i]t's like your body is doing stuff, but you're just looking at it from the outside. And you don't really have control over it. And then sometimes I'll just blackout." AR at 46.

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

[6] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

sequential evaluation process,"[7] the ALJ determined that Plaintiff had the severe impairments of PTSD, anxiety disorder, and personality disorder. AR at 21.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). AR at 14–17. The ALJ specifically considered whether Plaintiff's mental impairments met or medically equaled the criteria for Listing 12.04 for "depressive, bipolar and related disorders," Listing 12.06 for anxiety disorders, Listing 12.08 for personality disorders, and Listing 12.15 for "trauma- and stressor-related disorders." AR at 21.

In evaluating Plaintiff's mental impairments, the ALJ applied the "special technique" set forth in 20 C.F.R. § 404.1520a to rate the degree of Plaintiff's limitation resulting from those impairments in four broad areas of mental functioning (also referred to as the "paragraph B" factors): understand, remember, or apply

---

[7] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a(c). Based on the evidence in the record, the ALJ found that Plaintiff had "moderate limitations" in each of the four areas of mental functioning. AR at 21–25. *See also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00F(2)(c) (providing that a rating of "moderate limitation" indicates that the claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair").

Then, before proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff could perform only simple work at a consistent, goal-oriented pace; she could not engage in interaction with the public, and only engage in occasional interaction with supervisors and coworkers after learning job tasks from an informational or demonstrational lesson; she could only perform work that did not require working in close coordination with others or sharing of job tasks; and she could only make simple decisions and tolerate only occasional minor changes. AR at 25–29.

At step four, based on Plaintiff's RFC and the testimony of the VE, the ALJ found that Plaintiff was unable to perform her past relevant work as a cashier checker or stock clerk. AR at 29. However, at step five, the ALJ considered Plaintiff's age, education, work experience, and RFC, as well as the testimony of the VE, and found that Plaintiff could perform the requirements of other representative occupations that existed in significant numbers in the national economy, such as a router, a

6

kitchen helper, and a marker. AR at 30–31. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB or SSI payments. AR at 31.

On April 26, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See also* 42 U.S.C. § 1382c(a)(3)(A) (adopting the same definition of "disabled" for SSI eligibility).

Where an individual's application for DIB or SSI has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. *See also* 42 U.S.C. § 1383(c)(3) (authorizing judicial review of SSI determinations as provided in § 405(g)). The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new

evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d

at 448. Yet, although "the evidentiary threshold for the substantial evidence standard is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

In her motion for judgment on the pleadings, Plaintiff argues that the ALJ erred in her evaluation of the medical opinion evidence. ECF No. 8-1. In particular, she maintains the ALJ erred in weighing the persuasiveness of the opinions or prior administrative findings of Plaintiff's treating providers, the state psychological consultants, and the consultative psychological examiners. *Id.* at 17–22. The Commissioner maintains that the ALJ's decision applied the proper legal standards, and that the ALJ's evaluations of the medical opinions and the ALJ's RFC finding were supported by substantial evidence. ECF No. 14-1. After a thorough review of the record, the Court agrees with the Commissioner that the ALJ did not commit legal error, and that the ALJ's decision is supported by substantial evidence.

## I.  Legal Principles

Regulations effective for all claims filed after March 27, 2017 provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). *See also, e.g., Spottswood v. Kijakazi*, No. 23-54-CV, 2024 WL 89635, at *3 (2d Cir. Jan. 9, 2024) (noting that under 20 C.F.R. § 404.1520c, the ALJ "owes no special deference to any

particular medical opinion in the record"). Rather, the regulations direct the ALJ to evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Of these factors, supportability and consistency are the most important. *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022) (discussing 20 C.F.R. § 404.1520c(b)(2)). Therefore, while the ALJ need not explain in her decision how she considered all of the factors, she must explain how she "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . ." 20 C.F.R. § 404.1520c(b)(2). Supportability refers to how "the objective medical evidence and supporting explanations presented by a medical source . . . support [the medical source's] opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(c)(1). Consistency refers to how similar "a medical opinion(s) or prior administrative medical finding(s) is with the evidence" in the record. 20 C.F.R. § 404.1520c(c)(2).

In conducting this evaluation, "[a]n ALJ is prohibited from 'playing doctor' in the sense that an ALJ may not substitute h[er] own judgment for competent medical opinion . . . ." *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00652 EAW, 2024 WL 2812434, at *7 (W.D.N.Y. June 3, 2024) (quoting *Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017)). Further, "[w]hile the

ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, [s]he cannot simply selectively choose evidence in the record that supports [her] conclusions." *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (internal quotation marks and citations omitted).

Nevertheless, the regulations make clear that the ALJ – and not the claimant's medical sources – is responsible for making the determination or decision about whether the claimant is disabled. 20 C.F.R. § 404.1520b(c)(3). As such, it is within the discretion of the ALJ to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

## II. Plaintiff's Treating Providers

On June 28, 2023, Licensed Mental Health Counselor Marc McDowell ("LMHC McDowell") completed a psychiatric functional assessment that was co-signed by supervising Nurse Practitioner Patricia Ayala. AR at 981–86. LMHC McDowell gave Plaintiff a "very guarded" prognosis (AR at 981), indicating – among other limitations – that Plaintiff had marked to extreme limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. AR at 983–84. McDowell estimated that due to the symptoms of her depersonalization disorder, PTSD, and depressive disorder, Plaintiff was likely to miss more than four days of work per month, and to be late more than four days per month, both work preclusive amounts according to the VE's testimony. AR at 58 (identifying absences of more than one day per month as work preclusive), 984.

In her decision finding that Plaintiff was not disabled, the ALJ explained why

she was not persuaded by McDowell's opinion:

> In addition to being inconsistent with the other medical opinions of record, the overall degree of limitation proposed by Mr. McDowell is unsupported by his own and other treatment notes. As mentioned, while some of the claimant's mental status exams have noted positive findings, many others have been largely unremarkable. She has often been described as appearing "clean, neat, and appropriately dressed," as having a "generally happy" mood and congruent affect, and as exhibiting good eye contact and normal cognition . . . . Furthermore, the claimant has not been psychiatrically hospitalized in many years and has repeatedly described her medications and therapy as working well . . ., which is inconsistent with the degree of limitation described in Mr. McDowell's assessment.
>
> The undersigned again notes that [Plaintiff] indicated in her function report that she lived in an apartment with a roommate, helped take care of their cats, prepared some meals, picked up trash, put away dishes, shopped online and in stores, handled money, attended appointments, watched television, played video games, used social media, such as Facebook and Snapchat . . . . During consultative psychiatric examinations in 2022, [Plaintiff] reported she performed selfcare activities; did some cooking, cleaning, and laundry; shopped for groceries with a friend; and spent time watching television, playing video games, crocheting, and painting . . . . She claimed to socialize with her roommate, grandmother, and brothers, and she described her family relationships as "good" . . . . [Plaintiff]'s treatment notes also reference her gardening, decorating for different celebrations, watching YouTube videos, spending time with friends and family, crocheting and "making a lot of cat toys," shopping for Halloween decorations, going to her brother's home to work out and working on her diet and nutrition together, being excited about plans to go to Albany to see friends and visit some museums and parks, spending Christmas eve with her older brother, dying her hair, and painting . . . . These activities would not be possible if the claimant were as limited as Mr. McDowell proposed.

AR at 28 (internal citations to the record omitted).

Plaintiff argues that the ALJ erred by failing to consider LMHC McDowell's treating relationship with her and the length of the relationship. ECF No. 8-1 at 17–19. Comparing her case with *Rubin v. Commissioner of Soc. Sec.*, 116 F. 4th 145 (2d

Cir. 2024), Plaintiff maintains that, as in *Rubin*, the evidentiary record aligns with the assessment made by her treatment providers, and the Commissioner's final decision must be reversed. ECF No. 8-1 at 20.

The Court disagrees. At the outset, the Court notes that the ALJ applied the correct legal standard, appropriately explaining how she considered the supportability and consistency factors of LMHC McDowell's opinion under 20 C.F.R. § 404.1520c(b)(2). In regards to supportability, the ALJ noted that LMHC McDowell's opinion was unsupported by his own treatment notes. AR at 28. While the opinion identified extreme limitations interacting with others and concentrating, persisting, or maintaining pace, the notes from LMHC McDowell are, for the most part, progress notes based apparently on Plaintiff's own reports rather than any objective mental status examinations. *See, e.g.,* AR at 656 (July 2020), 651 (Oct. 2020), 647 (Jan. 2021), and 643 (Nov. 2021).

In regards to consistency, the ALJ observed that the opinion was inconsistent with the other medical opinions in the record, and the other treatment notes. A consideration of Plaintiff's comparison of her case with *Rubin* is instructive here.

To begin with, even though the *Rubin* Court reversed the Commissioner's decision, the Circuit Court observed that "[t]he ALJ's [e]rror was not categorical . . . . [because] there is no blanket requirement that such a decision must be supported by a congruous medical opinion for it to meet [the] evidentiary standard" of supported by substantial evidence. *Rubin*, 116 F. 4th at 155. Rather, the *Rubin* Court noted that it reversed the Commissioner's decision based on case-specific considerations: the

record in *Rubin* included "the substantive medical opinions of only one physician," and the ALJ failed "to appreciate the consistent narrative" that the record evidence provided to support that physician's opinion. *Id.* at 155–56. Indeed, "[f]ar from showing that Rubin was 'able to handle a business' and 'maintain her household,' th[e record] evidence demonstrate[d] that Rubin was consistently having difficulty with basic daily activities, that her condition was exacerbated around the time of the death of her mother . . ., that any change in her environment and routine caused distress, anxiety, and fear . . . . that she was unable to make her own meals and rarely left the house . . . that she could not do even 'ordinary chores,' . . . and that she largely refused to venture outside of her apartment 'even just to go for walks to get outside,' despite her brother begging her to do so . . . ." *Id.* at 160. Consequently, the *Rubin* Court found that the ALJ's decision was not supported by substantial evidence. *Id.* at 160–61.

In the present case, by contrast, there are multiple medical opinions, and treatment notes that are more inconsistent with the severe limitations opined by LMHC McDowell than the evidence in *Rubin*. For one, whereas the state psychological consultants in *Rubin* found insufficient evidence to make a determination, the state psychological consultants in the present case found insufficient evidence to make DIB findings through January 2020, but had sufficient evidence to find for purposes of Plaintiff's SSI claims[8] that she had no more than

---

[8] While a claimant for DIB is eligible for payment from the onset date of his or her disability, provided the onset date occurred before her date last insured, an SSI claimant will only receive payments beginning the month after his or her application date. See 20 C.F.R. § 416.501. Thus, Plaintiff's date last insured for DIB payments is irrelevant to a determination of SSI benefits and the Commissioner may consider evidence beyond the date last insured to make a disability determination.

moderate limitations in any of the four areas of mental functioning. AR at 69, 105.

In addition, not only were there specific findings from state psychological consultants in Plaintiff's case, but there were also opinions from two consultative psychological examiners, who examined Plaintiff in April 2022 and September 2022, respectively. AR at 781–85; 822–25. Significantly, based on the results of their examinations, both of the consultative examiners also opined that Plaintiff had no more than moderate limitations in any of the four areas of mental functioning. AR at 783–84, 824.

Lastly, treatment notes from the medication management sessions that Plaintiff had alongside her therapy sessions with LMHC McDowell indicate less severe limitations than those discussed in either the *Rubin* case or in McDowell's opinion. Whereas the *Rubin* Court noted the record evidence was consistent with the doctor's opinion, the record here is more mixed.

As the ALJ here noted, "while some of [Plaintiff]'s mental status exams have noted positive findings, many others have been largely unremarkable." AR at 28. For instance, despite an emergency session in August 2021 for "having a really bad day" after being off medication for a couple of weeks (AR at 590), Plaintiff reported by September 2021 that she was taking her medications again, "feels as though she is in a good spot," and was "excited" because she was "going to Albany to see some of her friends and visit some museums and parks . . . ." AR at 584–85. Similarly, in November 2021 she reported that her sleep was "ok," her appetite was "fairly good," and "for the most part things [were] going really well . . . ." AR at 579–80. In December

2022, she reported that she wasn't eating as much as she was supposed to and was a little bit anxious because she didn't sleep well the night before, but that she had been out gardening quite a bit, was learning from YouTube videos, felt her medications were working well for her and that "usually she is doing very well." AR at 860. In March 2023, she again reported that she had "actually been doing pretty well" and that her medication helped her avoid anxiety and panic attacks. AR at 841.

Accordingly, the Court finds that the ALJ applied the appropriate legal standard, and that there was substantial evidence to support the ALJ's assessment of LMHC McDowell's opinion regarding Plaintiff's mental impairments. Plaintiff's argument with respect to the ALJ's evaluation of the opinions of Plaintiff's treatment provider is therefore without merit.

### III. The State Psychological Consultants

Plaintiff's records were reviewed in June 2022 by Erika Frances, Psy.D., during the initial consideration of Plaintiff's application for DIB and SSI benefits. Dr. Frances found that there was insufficient evidence to make a determination regarding Plaintiff's mental impairments between her alleged onset date of July 1, 2019 and her date last insured for DIB payments of June 30, 2020. AR at 86–87. However, for purposes of SSI payments, Dr. Frances found that Plaintiff had no more than moderate limitations in any of the four areas of mental functioning (AR at 69), and the following mental RFC:

> I. Understanding and Memory: The claimant is able to understand and remember simple and detailed instructions and work procedures without substantial limitation.

II. Sustained Concentration and Persistence: The claimant is able to sustain ongoing mental performance for a full workday completing simple routine tasks.

III. Social Interaction: The claimant does exhibit difficulty with socialization and would benefit from a setting where [s]he would have minimal interactions with supervisors, coworkers and the public.

IV. Adaptation: The claimant can adapt to changes in a routine work setting.

AR at 75.

J. Penny, Psy.D., reviewed Plaintiff's records in November 2022 during the reconsideration of Plaintiff's application for DIB and SSI benefits. Dr. Penny also found that there was insufficient evidence to assess the level of severity and impact on function of Plaintiff's mental impairments during the relevant period for disability benefits. AR at 85–87. However, for purposes of SSI payments, Dr. Penny found that Plaintiff had no more than moderate limitations in any of the four areas of mental functioning (AR at 105), and the following RFC:

I. Understanding and Memory: The claimant is able to understand and remember non-complex and detailed instructions and work procedures without substantial limitation.

II. Sustained Concentration and Persistence: Although the claimant may have lapses in focus, motivation and reliability, the frequency, intensity and duration of these occurrences would not be expected to substantially detract from the claimant's ability to complete routine tasks at a reasonable pace.

III. Social Interaction: The claimant does exhibit difficulty with socialization and would benefit from a setting where she would have minimal interactions with supervisors, coworkers and the public.

IV. Adaptation: Claimant would have difficulty handling high stress or demand work situations, but can adapt to changes in a routine work setting and can use appropriate judgment to make work-related

17

decisions. Claimant can be aware of normal hazards and take appropriate precautions within normal limits.

AR at 112.

The ALJ found the prior administrative medical findings of both state psychological consultants, Dr. Frances and Dr. Penny, to be partially persuasive. AR at 27. She noted with respect to the record evidence regarding Plaintiff's DIB claim that "additional evidence received at the hearing level provide[d] a more comprehensive depiction" of Plaintiff's mental health history, which allowed her to evaluate Plaintiff's functioning during all periods at issue. *Id.* More to the point, she stated that the findings were persuasive insofar as they were consistent with one another and supported by narrative analyses that referenced Plaintiff's allegations, reported activities, and specific clinical findings. *See* AR at 74–75 (Dr. Frances' "additional explanation"); 111 (Dr. Penny's "additional explanation"). Nevertheless, the ALJ found that both state psychological consultants understated Plaintiff's abilities in the area of "social interaction," and that Plaintiff had the ability for at least "occasional" interaction with coworkers and supervisors. AR at 28.

Plaintiff argues that even partial reliance on the findings of Dr. Frances and Dr. Penny was misplaced because they did not examine Plaintiff and did not have access to large portions of the records, particularly recent mental health treatment notes and LMHC McDowell's opinion. ECF No. 8-1 at 20–21. She maintains that these deficiencies leave Dr. Frances' and Dr. Penny's respective opinions "stale," and entitled to little, if any, weight. *Id.*

The Court disagrees. To begin with, the Commissioner's regulations expressly

recognize that "[s]tate agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation," and their prior administrative medical findings must be considered. 20 C.F.R. §§ 404.1513a(b)(1), 404.1520c(a). Further, "'[i]t is well settled that an ALJ is entitled to rely upon the opinions of the [s]tate [a]gency's medical and psychological consultants, since they are qualified experts in the field of Social Security disability.'" *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 387 (W.D.N.Y. 2015) (quoting *Karlsson–Hammitt v. Colvin*, No. 13–CV–916S, 2014 WL 5500663, at *3 (W.D.N.Y.2014). Indeed, a state agency consultant's prior administrative finding may constitute substantial evidence, if it is consistent with the record as a whole. *Babcock v. Barnhart*, 412 F. Supp. 2d 274, 280 (W.D.N.Y.2006) (citations omitted); *see also Diaz v. Shalala*, 59 F.3d 307, 212 n.5 (2d Cir. 1995) (explaining that the opinions of non-examining sources may override treating sources' opinions provided that they are supported by evidence in the record).

To be sure, "medical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding." *Camille v. Colvin*, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015). However, a medical opinion is not stale simply because of its age, but because it does not account for a claimant's deteriorating condition. *Felicia A. o/b/o O.A. v. Comm'r of Soc. Sec.*, No. 5:23-CV-668, 2024 WL 3696293, at *6 (N.D.N.Y. Aug. 7, 2024) (citing *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018); *Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017)). Thus, remand is

only warranted if the ALJ fails to consider whether the older evidence was stale where newer evidence showed that the claimant's condition had significantly changed within the relevant period. *See Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642, 644 (2d Cir. 2020).

That is not the case here. In fact, the ALJ explicitly acknowledged that she had considered "additional evidence received at the hearing level" which allowed her to evaluate Plaintiff's functioning during all periods at issue. AR at 27. Moreover, as indicated in the Court's discussion above of the treatment notes from Plaintiff's mental health provider, Plaintiff's condition did not deteriorate following the state consultants' respective reviews of the record in June and November 2022. Rather, she appeared to be "doing very well" when she adhered to her medication plan. AR at 860 (treatment note from December 2022). Accordingly, Plaintiff's argument regarding the ALJ's evaluation of the state psychological consultants' findings is without merit.

## IV. The Consultative Examiners

Todd Deneen, Psy.D., performed a consultative psychiatric exam of Plaintiff in April 2022. AR at 781–785. He found that her attention and concentration were mildly impaired, but that her posture and motor behavior were normal; her speech was fluent; her affect was full range; her mood was euthymic; her recent and remote memory skills were intact; she was oriented to person, time, and place; she had average intellectual functioning; and her insight and judgment were good. AR at 782–83. Consequently, Dr. Deneen opined that Plaintiff would have mild limitations sustaining concentration and performing a task at a consistent pace, as well as

sustaining an ordinary routine and regular attendance at work; and would have moderate limitations regulating her emotions, controlling her behavior, and maintaining well-being. AR at 784.

Sara Long, Ph.D., performed a consultative psychiatric exam of Plaintiff in September 2022. AR at 822–25. She found Plaintiff to be cooperative with good social skills, and neat and well groomed. AR at 823. She also found that though Plaintiff had "poor to fair" insight due to her anxiety, Plaintiff's posture and behavior were normal; eye contact was appropriate; speech was fluent and clear; thought processes were coherent and goal directed; affect was full range; mood was euthymic; attention and concentration were intact; recent and remote memory skills were intact; she had average intellectual functioning; and judgment was fair. AR at 823–24. In short, Dr. Long found that Plaintiff "present[ed] as more capable than recent work history indicates." AR at 824. Consequently, Dr. Long opined that Plaintiff had only "moderate limitations regarding regulating emotions." AR at 824.

The ALJ found the opinions of the consultative examiners to be "persuasive insofar as they are largely consistent with one another and are supported by their mostly normal clinical exams." AR at 27. However, the ALJ also found that the consultative examiners overstated Plaintiff's abilities in all areas but adaptation. *Id.* She stated that the evidence of record supports and is consistent with greater limitations in the other areas of work-related mental functioning. *Id.*

Plaintiff maintains that the ALJ erred in assigning persuasiveness to the consultative examiners because, although they are largely consistent with one

another, they are inconsistent with the rest of the body of evidence in Plaintiff's case. ECF No. 8-1 at 21–22. In particular, Plaintiff points to LMHC McDowell's opinion, which she believes to be consistent with other evidence, as well as to the longevity of McDowell's treatment relationship with Plaintiff, his specialization, the frequency of his treatment of Plaintiff, and the purpose of treatment. *Id.*

This argument is not persuasive. As discussed above, the ALJ did not err in her evaluation of LMHC McDowell's opinion. Further, "the ALJ is permitted to rely on the opinion of a consultative examiner provided the opinion is supported by and consistent with other evidence in the record." *Anthony N. v. Dudek*, No. 22-CV-370F, 2025 WL 559208, at *6 (W.D.N.Y. Feb. 20, 2025) (citing *Camille*, 652 Fed. App'x at 28, for the proposition that "the report of a consultative physician may constitute substantial evidence"). As indicated, the ALJ found that the consultative examiners' opinions were supported by their relatively normal examination findings, but she also weighed the other evidence in the record and found that the examiners understated Plaintiff's abilities. Accordingly, the ALJ formulated an RFC that was more restrictive than the opinions of the consultative examiners would have suggested, including limitations not just in regulating emotions and sustaining concentration, but also by limiting Plaintiff to "simple work," only "occasional interaction with supervisors and coworkers," and no interaction with the public. AR at 25.

In sum, the Court finds that the ALJ applied the proper legal standards and exercised her discretion to formulate an RFC that was supported by substantial evidence. "[A]bsent a legal error, the Court must uphold the Commissioner's decision

if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance." *Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) (quoting *Russell v. Saul*, 448 F. Supp. 3d 170, 175 (D. Conn. 2020); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence.").

## CONCLUSION

For the foregoing reasons, Plaintiff Casey T.'s motion for judgment on the pleadings [ECF No. 8] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 14] is granted. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED:    September 8, 2025
          Rochester, New York


HON. MEREDITH A. VACCA
United States District Judge

23